ALEXIS GALINDO (SBN 136643)
 Email: agalindo@cgsattys.com
MAXIMILIANO GALINDO (SBN 328187)
 Email: mgalindo@cgsattys.com
CURD GALINDO & SMITH LLP
301 East Ocean Blvd., Suite 1700
Long Beach, CA 90802-4828
Telephone:  (562) 624-1177
Facsimile:    (562) 624-1178
www.cgsattys.com

Attorneys for Plaintiff
MASON LEWIS

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASON LEWIS | Case No. |
| PLAINTIFF, | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS** |
| vs. | |
| CITY OF MANHATTAN BEACH, SHAWN THOMPSON, STEVE KITSIOS, DANIEL BRANDT, JENNIFER LEACH, DONOVAN TORRES, IAN MIKELSON, DEREK SAN AGUSTIN, JASON GORDON, BRIAN HARRIS, DEENA SOPKO, SHANE SMITH, THOMAS ROGERS, and DOES 1 through 20, inclusive, | 1. Municipal Liability – Failure to Train 42 U.S.C. § 1983<br>2. Supervisory Liability 42 U.S.C. § 1983<br>3. Judicial Deception 42 U.S.C. § 1983<br>4. Conspiracy to Deprive of Civil Rights 42 U.S.C. § 1983<br>5. Unreasonable Seizure of Person 42 U.S.C. § 1983-Fourth Amendment |
| DEFENDANTS. | 6. 5. Unreasonable Search 42 U.S.C. § 1983 Fourth Amendment<br>7. Excessive Force 42 U.S.C. § 1983<br>8. Substantive Due Process 42 U.S.C. § 1983<br>9. Malicious Prosecution 42 U.S.C. § 1983 |



10. Deliberate Suppression of Evidence 42 U.S.C. § 1983
11.  Defamation Plus-42 U.S.C. § 1983
12. False Arrest / False Imprisonment Cal. Gov. Code § 820.4
13. False Arrest / False Imprisonment by Private Citizen-Rogers.
14. Violation of the Unruh Act Cal. Civ. Code § 51
15. Violation of the Ralph Act Cal. Civ. Code § 51.7
16. Violation of the Bane Act Cal. Civ. Code § 52.1
17. Civil Conspiracy
18. Intentional Infliction of Emotional Distress
19. Assault
20. ADA Violation (42 U.S.C. § 12132 & 29 U.S.C. § 794)
21. [42 U.S.C. 1983] Fourteenth Amendment Equal Protection Clause-Discrimination on the Basis of Disability

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

Plaintiff MASON SWAN LEWIS ("PLAINTIFF"), for his complaint against Defendants CITY OF MANHATTAN BEACH ("CITY"), SHAWN THOMPSON ("THOMPSON"), STEVE KITSIOS ("KITSIOS"), DANIEL BRANDT ("BRANDT"), JENNIFER LEACH ("LEACH"), DONOVAN TORRES ("TORRES"), IAN MIKELSON ("MIKELSON"), DEREK SAN AGUSTIN ("SAN AGUSTIN"), JASON GORDON ("GORDON"), BRIAN HARRIS ("HARRIS"), DEENA SOPKO ("SOPKO"), SHANE SMITH ("SMITH"), THOMAS ROGERS ("ROGERS"), and DOES 1 through 20, inclusive, allege as follows:

//

//

Complaint for Damages for Violation of Civil Rights

2

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

## INTRODUCTION

1.     This lawsuit arises from the malicious conduct of members of the Manhattan Beach Police Department, who, having conspired with outside third parties, made false statements to a Los Angeles County Superior Court judge to obtain a search warrant, humiliated PLAINTIFF in front of his neighbors in an undressed manner, seized all of his electronic property as a result of the perjured search warrant, arrested PLAINTIFF unlawfully, psychologically tormented him in custody, destroyed exculpatory evidence, and presented a fabricated police report to the Los Angeles County District Attorney's office, which resulted in criminal charges being filed against PLAINTIFF which were ultimately dismissed.

2.     Prior to the unlawful acts of the Defendants, PLAINTIFF was an aspiring composer whose career was just beginning to blossom.  Shortly before the incident, PLAINTIFF graduated from the Herb Alpert School of Music at UCLA with his Ph.D. and was believed to be the youngest ever student to graduate with a doctorate in music composition.  He had previously obtained his B.A. and M.A. at UCLA in music composition.  In addition, PLAINTIFF was beginning to garner international performances of his music, with a composition for string orchestra being debuted in Moscow shortly before the incident.

3.     While the COVID-19 pandemic severely hampered the music industry, PLAINTIFF had nevertheless established relationships with several leading orchestras, opera companies, and music celebrities, all with the intention of presenting them music in 2022 to promote and perform.  PLAINTIFF had a well-regarded agent/manager working with him to help promote his music and his

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

compositional abilities.  All these breakthroughs and opportunities were destroyed as a direct result of the Defendants' conduct.

4.     The overall conduct of the Defendants, which will be elaborated in further detail, were coordinated and done exclusively with malicious intent.  Not a single act was a result of mere negligence or ignorance of the law.  While some Defendants were negligence or untrained, every act and omission was executed by at least one individual with intent on harming PLAINTIFF.  As a result of the Defendants' actions, PLAINTIFF's reputation was severely damaged in not only his hometown, but also throughout the Los Angeles region.  In addition, false and misleading information was publicly displayed online, incomplete and inaccurate police reports were improperly leaked to third parties, further tarnishing PLAINTIFF's reputation.  Defendants' conduct has caused PLAINTIFF severe and unrelenting emotional distress and trauma, physical ailment, and the inability to compose.  The seizure of his property resulted in the loss of his entire music composition catalogue, thereby depriving him the opportunity to work and seize on opportunities.

## **PARTIES**

5.     Plaintiff MASON LEWIS is and was at all relevant times a resident of the City of Manhattan Beach, County of Los Angeles, California.

6.     Defendant CITY OF MANHATTAN BEACH is a municipal corporation located in the County of Los Angeles and is established by the laws and constitution of the State of California, and owns, operates, manages, directs,

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

and controls the Manhattan Beach Police Department ("MBPD") which employs other Defendants in this action.

7.      Defendant SHAWN THOMPSON is a police officer employed by the MBPD.  At all relevant times, THOMPSON was acting under color of law within the scope of his duties as a police officer for the MBPD.  THOMPSON was acting with the complete authority of his principal, Defendant CITY.

8.      Defendant STEVE KITSIOS is a police officer employed by the MBPD.  At all relevant times, KITSIOS was acting under color of law within the scope of his duties as a police officer for the MBPD.  KITSIOS was acting with the complete authority of his principal, Defendant CITY.

9.      Defendant DANIEL BRANDT is a police officer employed by the MBPD.  At all relevant times, BRANDT was acting under color of law within the scope of his duties as a police officer for the MBPD.  BRANDT was acting with the complete authority of his principal, Defendant CITY.

10.     Defendant JENNIFER LEACH is a police officer employed by the MBPD.  At all relevant times, LEACH was acting under color of law within the scope of her duties as a police officer for the MBPD.  LEACH was acting with the complete authority of his principal, Defendant CITY.

11.     Defendant DONOVAN TORRES is a police officer employed by the MBPD.  At all relevant times, TORRES was acting under color of law within the scope of his duties as a police officer for the MBPD.  TORRES was acting with the complete authority of his principal, Defendant CITY.

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

12. Defendant IAN MIKELSON is a police officer employed by the MBPD. At all relevant times, MIKELSON was acting under color of law within the scope of his duties as a police officer for the MBPD. MIKELSON was acting with the complete authority of his principal, Defendant CITY.

13. Defendant DEREK SAN AGUSTIN is a police officer employed by the MBPD. At all relevant times, SAN AGUSTIN was acting under color of law within the scope of his duties as a police officer for the MBPD. SAN AGUSTIN was acting with the complete authority of his principal, Defendant CITY.

14. Defendant JASON GORDON is a police officer employed by the MBPD. At all relevant times, GORDON was acting under color of law within the scope of his duties as a police officer for the MBPD. GORDON was acting with the complete authority of his principal, Defendant CITY.

15. Defendant BRIAN HARRIS is a police officer employed by the MBPD. At all relevant times, HARRIS was acting under color of law within the scope of his duties as a police officer for the MBPD. HARRIS was acting with the complete authority of his principal, Defendant CITY.

16. Defendant DEENA SOPKO is a police officer employed by the MBPD. At all relevant times, SOPKO was acting under color of law within the scope of her duties as a police officer for the MBPD. SOPKO was acting with the complete authority of his principal, Defendant CITY.

17. Defendant SHANE SMITH is a police officer employed by the MBPD. At all relevant times, SMITH was acting under color of law within the

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

scope of his duties as a police officer for the MBPD.  SMITH was acting with the complete authority of his principal, Defendant CITY.

18.    Defendant THOMAS ROGERS (hereinafter "ROGERS") is and was at all relevant times a resident of the City of Manhattan Beach, County of Los Angeles.

19.    The true names and capacities of Defendant DOE OFFICERS are unknown to PLAINTIFF, who otherwise sue these Defendants by such fictitious names.  Plaintiff will seek leave to amend his Complaint to show the true names and capacities of these Defendants when they have been ascertained.  Each of the fictitiously named Defendants are responsible in some manner for the conduct or liabilities alleged herein.

20.    Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, HARRIS, GORDON, SOPKO, SMITH and DOES 1 through 20 are sued in their individual and official capacities.

## **JURISDICTION AND VENUE**

21.    This civil rights action is brought in part pursuant to violations of 42 U.S.C. § 1983 and violations of PLAINTIFF's rights under the Fourth and Fourteenth Amendments of the United States Constitution.  Accordingly, jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343.

22.    This Court has jurisdiction over Defendants as they are all residents and/or entities in the State of California, and as a result of the tortious conduct against PLAINTIFF, all of which occurred in the State of California.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

23. This Court has supplemental jurisdiction over PLAINTIFF's state law claims pursuant to 28 U.S.C. § 1367.

24. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 as Defendants are residents of this district and due to all Defendants being residents of the State of California, to which this district is located in.

25. Venue is further proper in the Central District of California pursuant to 28 U.S.C. § 1391 as all the conduct complained of herein occurred in Los Angeles County, which is within this district.

## FILING OF GOVERNMENT CLAIMS

26. Pursuant to California Government Code § 910, et seq., on August 22, 2022, PLAINTIFF filed comprehensive and timely claims for damages with Defendant CITY. On November 19, 2022, Defendant CITY rejected PLAINTIFF's claims.

## TOLLING OF ALL CLAIMS

27. Pursuant to California Government Code § 945.3, all claims were tolled from a period of July 27, 2022 to January 30, 2024 due to the existence of a criminal case that this civil action is directly related to. Accordingly, the filing of PLAINTIFF's state claims are timely.

28. In addition, all federal claims pursuant to 42 U.S.C. § 1983 are timely as any federal claim filed concurrently with state claims are enjoined by the same tolling provided by Cal. Gov. Code § 945.3. It is precedent in this district that the supremacy clause does not affect tolling and that all federal claims must yield to state law tolling statutes. *See* Harding v. Galceran (9th Cir. 1989) 889 F.2d 906.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

## FACTUAL ALLEGATIONS

### Background To Events Giving Rise To This Litigation

29.    PLAINTIFF has lived in Manhattan Beach, California for the vast majority of his life, except for a few years while attending high school.  As such, he is well known in the community for his musical and academic achievements, as well as being an accomplished tennis player.  PLAINTIFF was very popular in the community, especially at the Manhattan Country Club ("MCC"), where he had many friends and was well liked amongst the membership and the staff.

30.    Prior to the events that gave rise to this litigation, PLAINTIFF had no criminal record whatsoever.  PLAINTIFF furthermore had no complaints ever levied against him of any kind, never faced any discipline while enrolled in any academic institution, never had been involved in any physical altercation, or had never been involved in any incidents at the MCC.

31.    This civil lawsuit arises from an incident at the MCC on February 6, 2022.  Prior to the incident, PLAINTIFF was the target of repeated harassment and stalking behavior from an unknown individual.  This behavior had occurred exclusively in the MCC men's locker room.  He had caught this individual attempt to peek at him from underneath the bathroom stall partition, and on other occasions, when PLAINTIFF would occupy a stall, the individual would sneak into an adjacent stall, stand motionless for a while, then quickly leave.

32.    This harassment occurred for a period of approximately nine months.  PLAINTIFF had made complaints to the MCC about certain issues preceding the harassment, however never received any assistance with them.  Most of these

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

issues were significant in nature. On one such occasion, involving dangerous conditions of the tennis courts, the failure to act on PLAINTIFF's complaint resulted in the tearing of the ankle muscles and ligaments of another member. With the MCC not being a viable option to assist with the harassment, PLAINTIFF attempted to obtain proof himself and catch the individual on his own.

33.    Since the age of three, PLAINTIFF has been diagnosed with autism spectrum disorder, formerly identified in the DSM I through IV as Asperger's disorder. As a result, PLAINTIFF has impairment in social areas in life and cannot interpret the emotions in others, and furthermore cannot understand how his actions may affect others.

34.    As a result of his impairment, PLAINTIFF's method in obtaining evidence and the identity of the stalker, while he believed tactically effective, was not considered the best strategy from a social standpoint. PLAINTIFF used his cellphone to monitor the partition gap where he had caught the individual's head. To PLAINTIFF, this tactic would allow him to prove what had been occurring, in addition to the individual's identity. With this information, he could get this oppressive behavior to end.

35.    On February 6, 2022, this behavior occurred yet again. As a result, PLAINTIFF tried his strategy again. After about a minute, PLAINTIFF prepared to leave, but as he was about to do so, the individual in the adjacent stall apparently noticed the phone and subsequently accused PLAINTIFF of trying to spy on him. The person asked "hey bro, are you taking pictures of me?"

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

36.     PLAINTIFF was stunned and horrified to recognize the voice of ROGERS' youngest son.  Prior to the incident, PLAINTIFF, ROGERS, ROGERS' wife, and ROGERS' middle son were friends, and ROGERS and his family thought very highly of PLAINTIFF.  The revelation that the individual very likely could have been ROGERS' son was shocking.  PLAINTIFF, upon hearing the voice, proceeded to exit the bathroom, the locker room, and proceeded to leave the MCC, which he had planned on doing anyway.

37.     When PLAINTIFF had used his cellphone as an apparatus to obtain evidence, he would record the vantage point for approximately a minute.  Since the record function was on during this incident, PLAINTIFF deleted the video from his phone.  He also deleted the shared video off his computer, as iCloud automatically transfers photos and videos from his phone to his computer.  PLAINTIFF believed the potential video evidence was now redundant, as if it were ROGERS' son the whole time, he would now be aware PLAINTIFF suspected his activities.  Furthermore, PLAINTIFF, not harboring any animosity, did not want to get ROGERS' son into trouble, especially if he wasn't the person responsible.

**Officer Shane Smith's Investigation And Report**

38.     Unbeknownst to PLAINTIFF, ROGERS called the police based upon his son's contention he was deliberately videotaped in the bathroom.  Defendant SMITH was dispatched to the MCC to investigate the situation.

39.     SMITH spoke to ROGERS, ROGERS' son, and a custodian named Carlos Carrillo ("CARRILLO").  ROGERS, having witnessed nothing, had little to offer SMITH.  ROGERS' son indicated he was using the bathroom when he

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

noticed a phone camera aimed towards the stall he was in but was not certain whether he was being recorded or not. He indicated he asked whether the person in the adjacent stall was taking pictures of him but received no reply.

40. However, what CARRILLO told SMITH versus what SMITH documented in his incident report were directly contradictory to each other. SMITH claimed CARRILLO noticed two stalls occupied in the men's locker room's bathroom. He then claimed CARRILLO personally saw PLAINTIFF leave the adjacent stall to the handicap stall and was able to identify him by his height, build, sex, race, age, etc… In addition to these claims, SMITH made other contentions regarding CARRILLO, such as him cleaning the floors inside the bathroom.

41. SMITH fabricated his incident report. In reality, CARRILLO stated he never saw any person ever enter or exit any bathroom stall and the first time he saw PLAINTIFF was a significant distance from the bathroom stall, literally as he was at the door leaving the locker room.

42. CARRILLO, who would have no motive to lie, is clear that he did not see PLAINTIFF in the bathroom, but in an entirely different location within the men's locker room. The locker room is a large facility with a jacuzzi, sauna, steam room, treatment rooms, a rain shower room, showers, changing areas, and a TV lounge.

43. SMITH, consistent with the acts of several other Defendants, did not have his body camera activated while interviewing CARRILLO, which is against MBPD policy. He allegedly took notes, which were then used to write his incident

report.  Based on what was told to him, SMITH cited PLAINTIFF with a misdemeanor invasion of privacy offense.

### Detective Shawn Thompson Is Assigned To Investigate Further

44.    The following day, Defendant THOMPSON was assigned by Defendant KITSIOS to investigate further.  THOMPSON's investigation, if one could label it as such, consisted of very little activity.  Despite not being present at the club on February 6, 2022, THOMPSON elected not to discuss the matter with SMITH.  Rather, he relied entirely on SMITH's report.

45.    THOMPSON also refused to interview ROGERS, his son, or CARRILLO, despite all of them being readily available to give statements.  He additionally did not interview PLAINTIFF to get his side of the story.  THOMPSON claimed this was done to avoid giving PLAINTIFF the impression he was being investigated.  Regardless, MBPD policy 600.4.1 states that "if information indicates a crime has occurred, the officer shall … make reasonable attempts to locate, identify, and interview all available victims, complainants, witnesses and suspects."

46.    THOMPSON reviewed security footage showing PLAINTIFF walking down a hallway towards the exit near his parked vehicle.  THOMPSON would later falsely state the video showed PLAINTIFF running and leaving the bathroom.  In addition, THOMPSON and a colleague presented a photographic lineup to the CARRILLO who identified the picture that looked like PLAINTIFF. Finally, THOMPSON drove by PLAINTIFF's house and took a picture of him washing his car.  No further investigative activity occurred.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562) 624-1178

## Thompson's Search Warrant

47. At some point prior to February 24, 2022, THOMPSON submitted a search warrant affidavit electronically to Judge Rene C. Gilbertson of the Los Angeles County Superior Court for a determination of probable cause.

48. Despite the alleged offense being a misdemeanor, THOMPSON falsely and maliciously accused PLAINTIFF of being in possession of child pornography. He makes numerous statements on the affidavit stating PLAINTIFF possesses and distributed child pornography, is in violation of California Penal Code § 311.11, and makes dozens of boilerplate contentions about people who possess child pornography without a single reference to evidence connecting the statements to PLAINTIFF. He states the warrant will assist in finding "the child pornography taken the day in question at the [MCC]."

49. Further incorporated into the search warrant affidavit is SMITH's false allegations stating CARRILLO identified PLAINTIFF fleeing from the adjacent bathroom stall. THOMPSON then lies in his report by stating he reviewed video footage of PLAINTIFF running from the bathroom. Both statements falsely establish consciousness of guilt.

50. With THOMPSON's false statements regarding child pornography, the additional false statements about PLAINTIFF running from the scene, and SMITH's fabrication, Judge Gilbertson signed the warrant, having no reason to believe she was being lied to and deceived.

51. Since then, substantial evidence has surfaced demonstrating THOMPSON deliberately lied on the affidavit, thus committing perjury.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

Notwithstanding the security video which clearly shows PLAINTIFF was not running nor leaving the bathroom, THOMPSON knew the alleged picture, as described, is not child pornography.  In his deposition from PLAINTIFF's parents' case, he stated a picture of a child sitting on the toilet can be child pornography if the photographer's motive was sexual.  THOMPSON recovered the video PLAINTIFF made on February 6, 2022 which inadvertently captured a glimpse of ROGERS' son on the toilet.  THOMPSON accused PLAINTIFF of making the video for sexual reasons.

52.    THOMPSON's actions did not match his words.  Even though he found an image of a child sitting on the toilet, which according to him was made for sexual reasons, THOMPSON did not refer child pornography charges to the District Attorney.  Rather, he referred the same misdemeanor SMITH cited.  If he truly believed the image was child pornography, THOMPSON would have acted accordingly and recommended felony charges.  Therefore, THOMPSON committed perjury by stating PLAINTIFF possessed child pornography.

53.    THOMPSON made multiple perjurious statements regarding his allegation PLAINTIFF distributed child pornography.  THOMPSON made the allegation in his affidavit, definitively stating PLAINTIFF distributes child pornography-a false statement.

54.    Since the writing of the affidavit, THOMPSON has demonstrated a propensity to further make false statements. THOMPSON has made statements that he possessed evidence PLAINTIFF not only possessed and distributed child pornography, but also communicated with minors to sexually exploit them,

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

communicated with other child pornography collectors, and even stated he had evidence PLAINTIFF had large collections of child pornography.  These are all false statements.

## Thompson and Rogers' Conspiracy

55.    Meanwhile, ROGERS began to see this opportunity as an easy way to obtain money.  ROGERS was a former sheriff's deputy for Orange County.  After leaving the force, ROGERS became a senior investigator for the Los Angeles County District Attorney's office.  His family has significant law enforcement background, as his brother Todd Rogers was the assistant sheriff for Los Angeles County.  With this experience, ROGERS has significant knowledge in arrests, investigations, and other police activities.

56.    THOMPSON knew he could not make an arrest for a misdemeanor not committed in his presence.  He was also aware he could not arrest PLAINTIFF inside his home without a warrant and exigent circumstances.  However, ROGERS and THOMPSON conspired to deprive PLAINTIFF of his right to be free from unreasonable searches and seizures.  ROGERS demanded PLAINTIFF be arrested, and accordingly, THOMPSON willfully disregarded the law and made the arrest.  Even though ROGERS at the time had no evidence whatsoever PLAINTIFF had done anything wrong, he engaged in malicious actions.

57.    Upon information and belief, PLAINTIFF learned in March 2024 that ROGERS' motivation was to use the arrest to not only defame PLAINTIFF, but also to weaponize the arrest and prosecution as means to obtain money through an utterly frivolous civil action.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

58. In March 2022, after the illegal arrest, PLAINTIFF had requested a copy of the police report. However, the MBPD Records Department denied the request, stating the release of the report would compromise the investigation since it had not concluded. It would ultimately not conclude until July 2022. In March of 2024, PLAINTIFF learned that despite the fact that the investigation had be completed in July 22, the MBPD provided the incomplete, inaccurate report to ROGERS in March of 2022. In March 2024, PLAINTIFF learned that in late April 2022, ROGERS began to disseminate it to individuals in Manhattan Beach, branding PLAINTIFF as some sort of pedophile. As such, the MBPD is complicit in the defamation that had occurred.

### The Search Of Plaintiff's Residence

59. On February 24, 2022, Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, and HARRIS executed the search warrant at PLAINTIFF's residence ("RESIDENCE") at 7 am. Defendants arrived heavily armed, some even brandishing AR-15 rifles. Some officers, including THOMPSON, even carried two handguns on their person. This overwhelming force was despite the allegation being a non-violent misdemeanor, something none of the Defendants even knew for sure had even occurred.

60. THOMPSON had the rifles present during the search of the residence and trained on PLAINTIFF. MBPD policy 304.10.5 identifies limited situations where the rifles should be deployed but summarized as "officers may deploy the patrol rifle in any circumstance where the officer can articulate a reasonable

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

expectation that the rifle may be needed." Prior to the search THOMPSON conducted a background check and weapons registration check on PLAINTIFF and his parents, both returning no criminal history or weapons. Therefore, the deployment of rifles was a show of excessive force and unjustified.

61. As the Defendants approached the home, PLAINTIFF's mother was descending the stairs inside the RESIDENCE. The RESIDENCE has a large, glass front door, and PLAINTIFF's mother noticed a large, armed formation of officers approaching. Noticing the potential exigency of such a force, she opened the door a crack and enquired what their purpose was being at her home. THOMPSON stated he had a search warrant and demanded entry. PLAINTIFF's mother immediately complied and allowed them to enter.

62. Once inside, PLAINTIFF's mother, who is Japanese, asked if the officers could remove their shoes, but KITSIOS gruffly said "no." KITSIOS asked where PLAINTIFF was, and his mother stated he is upstairs asleep and offered to get him. KITSIOS forced her aside and THOMPSON removed his handgun from its holster, ascending the stairs with his handgun in his left hand.

63. At the second-floor landing, THOMPSON stood at PLAINTIFF's door with his loaded handgun pointed at the door and demanded PLAINTIFF exit. KITSIOS went to the second bedroom, where PLAINTIFF's father was sleeping, demanded he show his hands and get out of bed.

64. PLAINTIFF complied with THOMPSON's commands, however, as he was sleeping in his underwear, he frantically tried to find something to put over them. Upon finding a robe, PLAINTIFF quickly threw it on. When PLAINTIFF

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

opened the door, he kept his hands clearly visible.  THOMPSON, however, raised his handgun to point it directly at PLAINTIFF's head, within just a few inches of it.  Even as PLAINTIFF walked by him, THOMPSON kept his handgun pointed towards his head.  PLAINTIFF posed absolutely no threat to THOMPSON whatsoever, yet THOMPSON deliberately placed PLAINTIFF's life in jeopardy.

65.    TORRES then began to handcuff PLAINTIFF.  PLAINTIFF asked why he was being arrested, but the officers present refused to answer, instead giving evasive responses, such as "you know what you did."  Under California law, officers are required to inform an individual why he is being arrested when he asks, pursuant to Cal. Pen. Code § 841.

66.    Now handcuffed, PLAINTIFF's robe opened, exposing his chest, legs, and underwear.  PLAINTIFF asked if he could close his robe, but one of the officers said "no."   TORRES then paraded PLAINTIFF outside in the humiliating condition, walking him down his front stairs barefoot in the frigid cold.  Towards the bottom of the stairs, PLAINTIFF said he was going to trip due to the waist tie dangling by his feet, so TORRES grabbed the robe and held it tighter.  PLAINTIFF was then locked in a police car.

67.    Meanwhile, PLAINTIFF's parents were detained in the living room, with his mother held in her underwear while in the presence of numerous male strangers.  KITSIOS informed them of the situation, describing what PLAINTIFF was incorrectly accused of as doing a "dumb thing."  KITSIOS declared his intent to take PLAINTIFF to jail, in accordance with the wishes of THOMPSON and ROGERS.

68.     PLAINTIFF's mother then informed KITSIOS her son had Asperger's disorder, and KITSIOS indicated he was aware of what that is.  KITSIOS said he will give THOMPSON this information.  As the conversation progressed, it appeared KITSIOS seemed to show more sympathy to the situation and eventually stated "if I don't have to take your son to jail, I won't."

69.     When THOMPSON showed up again, KITSIOS turned off his body camera and gave THOMPSON the information regarding PLAINTIFF's Asperger's disorder.  THOMPSON, still living up to his end of the conspiracy to deprive PLAINTIFF of his liberty, insisted PLAINTIFF be illegally arrested anyway and interrogated.  In deposition testimony, THOMPSON indicated he knew what Asperger's was and recalls being informed of it.  Now fully aware of PLAINTIFF's disability, he designed the jail environment to be as hostile and traumatic as possible to coerce a confession.  Indeed, THOMPSON indicated any decision regarding the investigation was at his discretion.

70.     After about 30 minutes of sitting handcuffed in the police car, TORRES entered the vehicle and began to drive PLAINTIFF to the MBPD jail. PLAINTIFF asked where he was being taken, and TORRES stated he was going to the station because THOMPSON wanted to ask him questions.  TORRES still refused to tell PLAINTIFF the reason for his arrest, saying "I can't tell you."

**At The MBPD Jail**

71.     Once at the jail, PLAINTIFF was greeted by SOPKO.  PLAINTIFF was still barefoot and in his open robe.  Interestingly enough, the Defendants did bring clothes from the RESIDENCE for PLAINTIFF to put on once at the jail, but

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

would not allow him to get dressed at the RESIDENCE.  PLAINTIFF noticed several unusual things about the jail itself.  First, almost all the lights were turned off inside the facility.  Second, the jail was almost as frigid as it was outside.  The temperature for February 24, 2022 was 61 degrees high, 39 degrees low.  It was so cold inside the jail facility that PLAINTIFF could see his breath.

72.     SOPKO locked PLAINTIFF inside a cell.  When PLAINTIFF asked for water, he was told no and was instructed to drink from the sink.  Upon seeing the pants that was taken from his home had a waist tie, SOPKO took the pants from PLAINTIFF stating he might commit suicide with the chord.  Instead, PLAINTIFF was provided unwashed, filthy prison pants to wear.  PLAINTIFF noticed SOPKO was receiving instructions from an unknown individual, answering the phone several times and talking about PLAINTIFF.  However, due to the fact the jail was not lit, except for his cell, PLAINTIFF could not locate where SOPKO was.

73.     After approximately five hours of languishing in these conditions, THOMPSON finally arrived to interrogate PLAINTIFF.  At this point, PLAINTIFF was shivering involuntary from mild hypothermia due to long exposure to the frigid temperature.  Notably, SOPKO was dressed in a down-filled jacket, boots, and padded pants, despite being indoors.

74.     The interrogation was recorded with THOMPSON's personal recording device and likely the built-in equipment most interrogation rooms have.  PLAINTIFF was not read his Miranda rights.  THOMPSON told PLAINTIFF he was aware he had Asperger's and even said his son has it.  He proceeded to ask

pointed questions, trying with considerable effort for PLAINTIFF to admit he deliberately videotaped a minor in a bathroom and that he did so for sexual reasons, however PLAINTIFF adamantly rebuffed each attempt. PLAINTIFF clearly told THOMPSON what had happened in the months prior with the stalker and that the sole reason for what had occurred was to obtain proof of what had been occurring.

75. Clearly, THOMPSON, having heard PLAINTIFF's side of events, did not believe he was any threat, so he was released on his own recognizance after about 20 minutes of questioning. PLAINTIFF was given a release certificate with the original misdemeanor cited. He then walked home.

### Cellulitis Infection

76. Once home, PLAINTIFF's parents noticed PLAINTIFF smelled of urine. PLAINTIFF immediately showered having been forced to wear filthy clothes, which as it so happened, smelled of urine. Throughout the remainder of the day, PLAINTIFF was very itchy all over his body.

77. The following day, PLAINTIFF noticed small, itchy red bumps on his legs, chest, and shoulders. Over the course of the next few days, the bumps became larger and more enflamed. PLAINTIFF then went to visit an urgent care facility. The doctor gave a physical examination of the bumps and determined them to be cellulitis from what appeared to be flea bites. PLAINTIFF had explained the events from the previous days, and the doctor confirmed that it was due to the pants and the filthy environment PLAINTIFF was detained in.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

78.    The doctor proscribed oral steroids and antibiotics for immediate use as cellulitis can poison the blood stream.  The medication succeeded in preventing severe ailment, however, the infections took a severe toll on PLAINTIFF's physical health over the course of the next several months.  PLAINTIFF lost over 20 pounds and suffered from substantial fatigue and psychological anxiety over his condition.

### Thompson's Police Report

79.    PLAINTIFF was eventually charged with misdemeanor invasion of privacy and loitering by the Los Angeles County District Attorney's office.  Interestingly enough, it was the very same office ROGERS worked for.  The charges would later be dismissed in their entirety.

80.    In August 2022, PLAINTIFF obtained a copy of the police report and the search warrant affidavit.  Immediately it became apparent why charges were filed.  Notwithstanding the conflict of interest between the DA's office and ROGERS, the police report was fabricated to a substantial degree.  The interrogation portion was completely manufactured, with THOMPSON's summary making PLAINTIFF sound crazy and inconsistent.  He either added statements that were never spoken or dramatically altered what was actually said to sound incriminating.  Even more shocking, anything PLAINTIFF said that was exculpatory or mitigating was not included.  Arguably the most heinous fabrication was THOMPSON stating PLAINTIFF confessed to being sexually aroused by people using the bathroom.  This supposed "confession" is material to the charges PLAINTIFF faced.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

81.     PLAINTIFF then subpoenaed a copy of the interrogation tape.  It was PLAINTIFF's belief the tape would prove the police report was falsified.  Apparently, the assigned DDA to the case never received any interrogation tape and was surprised to learn one existed.  He later confirmed the MBPD was unable to provide it.

82.     THOMPSON admitted that he deliberately deleted the interrogation tape after allegedly using it as an aid to write his police report.  Not only is this a violation of Cal. Pen. Code § 135, but also a violation of MBPD Policy 600.5.1, which states "no recording of a custodial interrogation should be destroyed or altered without written authorization from the prosecuting attorney and the Detective Bureau supervisor."  Neither gave consent for the tape's destruction.

83.     The fabricated interrogation was used against PLAINTIFF in multiple different proceedings.  First, the DDA read the sexual arousal portions aloud in open court in arguing against a granting of Mental Health Diversion.  While the DDA failed and diversion was ultimately granted, the judge, having believed THOMPSON's lies, ordered PLAINTIFF to undergo sexual addiction treatment.  This was devastating to PLAINTIFF mentally and emotionally, especially since he was innocent.

84.     The very same statements were again used against PLAINTIFF in effort to prevent the dismissal of the charges against him.  The charges were dismissed.  Nevertheless, the fixed obsession over these statements by the DA's office demonstrate how material they were to the criminal charges.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

85.    THOMPSON's fabricated police report was also cited, referenced, and used in arguments for motions in the frivolous civil case ROGERS' son brought against PLAINTIFF.  On numerous filings, counsel for ROGERS cited the interrogation portions verbatim.

## Plaintiff Has Suffered Substantial Damages

86.    While the baseless criminal charges were ultimately dismissed, substantial damage has already occurred.  As a direct result of Defendants' malicious acts, PLAINTIFF has suffered immeasurable mental anguish and emotional distress, further exacerbated by a disability that makes individuals like PLAINTIFF more emotionally sensitive.  Because every single electronic device of PLAINTIFF was seized, he lost his entire lifetime catalogue of compositions and was therefore forced to abandon any career opportunities that he had created prior to 2022.  Furthermore,  the extreme post-traumatic stress has rendered PLAINTIFF unable to compose and therefore unable to work.

87.    The falsified police report also was the source of considerable damages.  Aside from the fact the report was used to bring criminal charges and used as a basis for a civil case, it resulted in widespread defamation of PLAINTIFF's name and reputation, thanks to the combined efforts of THOMPSON and ROGERS.  The report resulted in economic losses, non-economic damages, loss of friendships, and loss of career opportunities.

//

//

//

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

## **FIRST CAUSE OF ACTION**

### **Municipal Liability – Failure to Train**

### **42 U.S.C. § 1983**

### **(Against Defendant CITY)**

88.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 87 as if set forth here in full.

89.    Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, and SMITH, all acting under color of law, deprived PLAINTIFF of his rights afforded to him by the United States Constitution.  These deprivations were either a part or directly as a result of Defendant CITY's failure to train their employees.

90.    As a result of the CITY's failure to train their employees, no fewer than eleven law enforcement officers violated countless constitutional laws, state laws, and internal policies.  Examples of these included, but were not limited to, the use of excessive force, in violation of the Fourth Amendment of the United States Constitution, the unreasonable seizure of PLAINTIFF without a warrant, in violation of the Fourth Amendment of the United States Constitution, the writing of inaccurate and dishonest police reports used to prosecute PLAINTIFF, in violation of the Fourteenth Amendment of the United States Constitution, the writing of perjured search warrant affidavits, in violation of the Fourth Amendment of the United States Constitution, the discrimination and failure to provide reasonable accommodations to PLAINTIFF for his mental disability, in violation

of the equal protections clause of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 12132 et seq., and 28 C.F.R. § 35.130(b)(7).

91.    The ignorance of the laws demonstrated by the Defendants as a result of the CITY's failure to train was further apparent when the Defendants, seeing other Defendants violating the law, never once intervened to prevent the deprivation of PLAINTIFF's rights.

92.    The failure of Defendant CITY to provide adequate training to its employees was directly responsible for the harm sustained by PLAINTIFF and is accordingly liable to PLAINTIFF for general and special damages.

## SECOND CAUSE OF ACTION

### Supervisory Liability

### 42 U.S.C. § 1983

### (Against Defendant KITSIOS)

93.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 87 as if set forth here in full.

94.    Defendant KITSIOS, acting under color of law, personally participated in the deprivation of PLAINTIFF's constitutional rights by authorizing the unlawful arrest of PLAINTIFF inside his home without a warrant and failed to intervene in the deprivation of other constitutional rights afforded to PLAINTIFF. Such examples included a failure to prevent the use of excessive force, the failure to prevent his subordinates from committing perjury on affidavits, the failure to prevent the malicious discrimination against PLAINTIFF, the failure to prevent the

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

writing of fabricated police reports, and the failure to prevent his subordinates from executing searches in an unreasonable manner.

95. As a direct result of KITSIOS's actions, PLAINTIFF sustained both physical and emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

96. Defendant KITSIOS' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## THIRD CAUSE OF ACTION

### Judicial Deception

### 42 U.S.C. § 1983

### (Against Defendant THOMPSON)

97. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 96 as if set forth here in full.

98. Defendant THOMPSON, acting under color of law, did knowingly and willfully submit a search warrant affidavit containing numerous reckless and intentional misstatements of material facts, resulting in the unlawful search of PLAINTIFF's RESIDENCE and the seizure of his personal property.

99. As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

100.   Defendant THOMPSON's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## **FOURTH CAUSE OF ACTION**

**Conspiracy to Deprive of Civil Rights**

**42 U.S.C. § 1983**

**(Against Defendants THOMPSON, KITSIOS, and ROGERS)**

101.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 100 as if set forth here in full.

102.   Defendants THOMPSON and KITSIOS, acting under color of law, conspired to deprive PLAINTIFF of his constitutional right to be free from unreasonable searches and seizures, in concert with ROGERS, a private citizen. Both THOMPSON and ROGERS had a meeting of the minds, with ROGERS demanding the unconstitutional and illegal arrest of PLAINTIFF, and THOMPSON obliging to do so.  KITSIOS, aware of this conspiracy, allowed and personally participated in the unconstitutional seizure of PLAINTIFF from his RESIDENCE.

103.   As a direct result of THOMPSON, KITSIOS, and ROGERS' actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

104.   Defendant THOMPSON, KITSIOS, and ROGERS' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

## FIFTH CAUSE OF ACTION

**Unreasonable Seizure of Person**

**42 U.S.C. § 1983-Fourth Amendment**

**(Against Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, and HARRIS)**

105.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 104 as if set forth here in full.

106.   Defendants THOMPSON, KITISOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, and HARRIS, acting under color of law, deprived PLAINTIFF of his right to be free from unreasonable seizures, by arresting and being an integral participant in the arrest of PLAINTIFF inside his RESIDENCE without an arrest warrant and exigent circumstances.

107.   As a direct result of the aforementioned Defendants actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

108.   Defendant THOMPSON, KITSIOS, and TORRES' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## SIXTH CAUSE OF ACTION

**Unreasonable Search**

**42 U.S.C. § 1983**

**(Against Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, and HARRIS)**

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

108.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 107 as if set forth here in full.

109.    Defendants THOMPSON, KITISOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, and HARRIS, acting under color of law, deprived PLAINTIFF of his right to be free from unreasonable searches, by exceeding the permitted scope of the warrant, by using excessive force during the search, and by conducting the search in an overzealous, extreme manner.

110.    As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

111.    Defendant THOMPSON, KITSIOS, and TORRES' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION

### Excessive Force

### 42 U.S.C. § 1983

### (Against Defendant THOMPSON)

112.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 111 as if set forth here in full.

113.    Defendant THOMPSON, acting under color of law, used excessive force against PLAINTIFF by pointing a loaded handgun within inches of PLAINTIFF's head without any legal justification.  PLAINTIFF at no point ever

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

posed a threat to THOMPSON or any law enforcement officer, was cooperative, was accused of a non-violent misdemeanor, and was outnumbered nine to one.

114. As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and is accordingly liable to PLAINTIFF for general damages.

115. Defendant THOMPSON's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION

### Substantive Due Process

### 42 U.S.C. § 1983

### (Against all Defendants)

116. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 115 as if set forth here in full.

117. Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, and SMITH, acting under color of law, and Defendant ROGERS, a private citizen, each engaged in conduct that deprived PLAINTIFF of his constitutional rights in a manner that shocks the conscience and completely unjustified by any governmental interest.

118. Such conscience shocking conduct included, but was not limited to, the use of a fraudulent warrant to execute a search of the subject RESIDENCE, the seizure of PLAINTIFF's property using said fraudulent warrant, the unlawful seizure of PLAINTIFF pursuant to a conspiracy, the psychological torment of PLAINTIFF while in custody, the destruction and concealment of material

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

evidence proving the misconduct of the MBPD, and the fabrication of police reports that were used as a *prima facie* basis for the prosecution of PLAINTIFF.

119. As a direct result of the Defendants' actions, PLAINTIFF sustained physical and emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

120. Defendant THOMPSON, KITSIOS, TORRES, SOPKO, SMITH, and ROGERS' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## NINTH CAUSE OF ACTION

### Malicious Prosecution

### 42 U.S.C. § 1983

### (Against Defendants THOMPSON and SMITH)

121. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 120 as if set forth here in full.

122. Defendants THOMPSON and SMITH, acting under color of law, did knowingly and willfully fabricate material facts on police reports that were used in the unjust prosecution of PLAINTIFF and were further used as a basis in the bringing of a civil action against PLAINTIFF.

123. As a direct result of THOMPSON and SMITH's actions, PLAINTIFF sustained emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

124. Defendant THOMPSON and SMITH's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## **TENTH CAUSE OF ACTION**

### **Deliberate Suppression of Evidence**

### **42 U.S.C. § 1983**

### **(Against Defendant THOMPSON)**

125. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 124 as if set forth here in full.

126. Defendant THOMPSON, acting under color of law, did knowingly and willfully destroy material evidence that would have been introduced into evidence for relevant legal proceedings. Said evidence would have substantially demonstrated PLAINTIFF's innocence and would have further proved THOMPSON fabricated the police report. Accordingly, the destruction of such material evidence contributed to the filing of charges against PLAINTIFF.

127. As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and economic losses and are accordingly liable to PLAINTIFF for general and special damages.

128. Defendant THOMPSON's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

//

//

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

## ELEVENTH CAUSE OF ACTION

### Defamation Plus

### 42 U.S.C. § 1983

### (Against Defendant THOMPSON)

129.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 128 as if set forth here in full.

130.   Defendant THOMPSON, acting under color of law, published written statements in his police report alleging PLAINTIFF admitted to behavior directly implying pedophilia and perversion, amongst other things, constituting libel and defamation *per se* under California law and a violation of California Civil Code §§ 44 and 45.  These statements in conjunction resulted in the deprivation of PLAINTIFF's liberty and the right to be free from unjust prosecution.

131.   Defendant THOMPSON, under color of authority, further contributed to the defamation against PLAINTIFF by allowing the incomplete and false police report to be provided to ROGERS and others, who then disseminated the report to various individuals in Manhattan Beach.  This was done despite the MBPD informing PLAINTIFF he could not have a copy of the report because it would "compromise the investigation."

132.   As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

133.   Defendant THOMPSON's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

### TWELFTH CAUSE OF ACTION

**False Arrest / False Imprisonment**

**Cal. Gov. Code § 820.4**

**(Against Defendants THOMPSON, KITSIOS, BRANDT, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, and CITY)**

134.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 133 as if set forth here in full.

135.   Defendants THOMPSON, KITSIOS, BRANDT, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, and SOPKO, acting under color of law, unlawfully and intentionally deprived PLAINTIFF of his liberty and freedom of movement by arresting PLAINTIFF in violation of California law. PLAINTIFF at no point consented to the deprivation of his liberty at any point.

136.   California Government Code § 820.4 prevents law enforcement officers from receiving any statutory immunity for committing a false imprisonment. Accordingly, Defendants are not immune from liability for their actions. Furthermore, Defendant CITY is vicariously liable for the actions of its employees in the false imprisonment of PLAINTIFF, as Cal. Gov. Code § 815.2 allows for a municipal entity to be held liable should their employees be subject to liability under California law.

137. As a result of the aforementioned Defendants' actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

138. Defendant THOMPSON, KITSIOS, TORRES, and SOPKO's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## THIRTEENTH CAUSE OF ACTION

### False Arrest / False Imprisonment by Private Citizen

### (Against Defendant ROGERS)

139. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 138 as if set forth here in full.

140. In March of 2024 PLAINTIFF discovered that Defendant ROGERS, in part of a conspiracy with other named Defendants, intentionally caused PLAINTIFF to be arrested without a warrant, constituting a false arrest under California law.

141. As a result of ROGERS' actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

142. Defendant ROGERS' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

//

//

//

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

# FOURTEENTH CAUSE OF ACTION

## Violation of the Unruh Act

## Cal. Civ. Code § 51

## (Against Defendants THOMPSON, KITSIOS, SOPKO, and CITY)

143.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 142 as if set forth here in full.

144.   Defendants THOMPSON, KITSIOS, and SOPKO, acting under color of law, discriminated against PLAINTIFF by reason of his disability by denying and aiding in the denial of full and equal accommodations, privileges, and services. Such discriminatory acts included, but was not limited to, the modifying of detention conditions into a more hostile, torturous environment that would naturally have a harmful impact on a person with Asperger's disorder, and deliberately not making any accommodations whatsoever after learning PLAINTIFF had a mental disability. Defendants THOMPSON, KITSIOS, and SOPKO's actions were motivated by the revelation PLAINTIFF had a mental disability and their perception of PLAINTIFF's disability.

145.   Defendants THOMPSON, KITSIOS, and SOPKO are ineligible for statutory immunity pursuant to Cal. Gov. Code § 820.4, as the violations of the Unruh Act derived from the illegal arrest and imprisonment of PLAINTIFF. Accordingly, Defendant CITY is vicariously liable for the acts of its employees pursuant to Cal. Gov. Code § 815.2.

146.   As a result of THOMPSON, KITSIOS, and SOPKO's actions,

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

147.   Defendant THOMPSON, KITSIOS, and SOPKO's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.  The Defendants are further liable to PLAINTIFF for treble damages as authorized by statute.

## FIFTEENTH CAUSE OF ACTION

### Violation of the Ralph Act

### Cal. Civ. Code § 51.7

### (Against THOMPSON, KITSIOS, SOPKO, and CITY)

148.   PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 147 as if set forth here in full.

149.   Defendants THOMPSON, KITSIOS, and SOPKO, acting under color of law, committed acts of psychological and physical violence against PLAINTIFF. Such acts included but was not limited to taking him to a public government facility in an exposed, revealing condition designed to humiliate PLAINTIFF, isolating PLAINTIFF in a frigid cell, refusing to give water to PLAINTIFF, and detaining PLAINTIFF in a facility with most of the lights turned off.  Defendants THOMPSON, KITSIOS, and SOPKO's actions were motivated by the revelation PLAINTIFF had a mental disability and their perception of PLAINTIFF's disability.

150.   Defendants THOMPSON, KITSIOS, and SOPKO are ineligible for statutory immunity pursuant to Cal. Gov. Code § 820.4, as the violations of the

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

Unruh Act derived from the illegal arrest and imprisonment of PLAINTIFF. Accordingly, Defendant CITY is vicariously liable for the acts of its employees pursuant to Cal. Gov. Code § 815.2.

151. As a result of THOMPSON, KITSIOS, and SOPKO's actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

152. Defendant THOMPSON, KITSIOS, and SOPKO's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages. The Defendants are further liable to PLAINTIFF for treble damages as authorized by statute.

## SIXTEENTH CAUSE OF ACTION

### Violation of the Bane Act

### Cal. Civ. Code § 52.1

### (Against all Defendants)

153. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 152 as if set forth here in full.

154. Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, and SMITH, acting under color of law, and Defendant ROGERS, a private citizen, violated PLAINTIFF's rights by their conduct constituting threats, intimidation, and/or coercion. Such acts included, but was not limited to, unlawfully search and seizing PLAINTIFF at his RESIDENCE, pointing a loaded firearm at PLAINTIFF's head and body in the absence of any threat or justification, arresting PLAINTIFF in

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

knowing and willful violation of Cal. Pen. Code § 836(a)(1), subjecting PLAINTIFF to psychological coercion while in custody in effort to forcibly extract a confession, in violation of the Fifth Amendment of the United States Constitution, and violating PLAINTIFF's right to be free from unlawful searches and seizures under Cal. Const. Art. I § 13, by both wrongful arrest and excessive force.

155. Defendants THOMPSON, KITSIOS, and SOPKO are ineligible for statutory immunity pursuant to Cal. Gov. Code § 820.4, as the violations of the Unruh Act derived from the illegal arrest and imprisonment of PLAINTIFF. Defendants are further ineligible for statutory immunity as no such immunity exists for excessive force in California. Accordingly, Defendant CITY is vicariously liable for the acts of its employees pursuant to Cal. Gov. Code § 815.2.

156. As a result of Defendants' actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

157. Defendants' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages. The Defendants are further liable to PLAINTIFF for treble damages as authorized by statute.

## SEVENTEENTH CAUSE OF ACTION

### Civil Conspiracy

### (Against Defendants THOMPSON, KITSIOS, and ROGERS)

158. PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 157 as if set forth here in full.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

159. Defendants THOMPSON and KITSIOS, acting under color of law, conspired to deprive PLAINTIFF of his freedom and liberty, in concert with ROGERS, a private citizen. Both THOMPSON and ROGERS had a meeting of the minds, with ROGERS demanding the statutorily unlawful and illegal arrest of PLAINTIFF, and THOMPSON obliging to do so. KITSIOS, aware of this conspiracy, allowed and personally participated in the illegal seizure of PLAINTIFF from his RESIDENCE. Such illegality was clearly established under Cal. Pen. Code § 836(a)(1), and THOMPSON knew he was breaking the law when he executed the arrest.

160. As a direct result of THOMPSON, KITSIOS, and ROGERS' actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

161. Defendant THOMPSON, KITSIOS, and ROGERS' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## EIGHTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

162. PLAINTIFF restates and re-alleges each and every allegation in paragraphs 1 through 161 as if set forth here in full.

163. Defendants THOMPSON, KITSIOS, BRANDT, LEACH, TORRES,

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, and SMITH, acting under color of law, and Defendant ROGERS, a private citizen, directly engaged in conduct or participated in conduct so extreme and outrageous that was designed and intended to cause severe emotional distress.  Such extreme conduct has been pled in sufficient detail in this complaint herein and is therefore incorporated by reference into this cause of action.

164.   As a direct result of Defendants' actions, PLAINTIFF sustained physical and emotional injuries and economic losses and is accordingly liable to PLAINTIFF for general and special damages.

165.   Defendants' acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## NINETEENTH CAUSE OF ACTION

### Assault

### (Against Defendant THOMPSON)

166.   PLAINTIFF restates and re-alleges each and every allegation in paragraphs 1 through 165 as if set forth here in full.

167.   Defendant THOMPSON, acting under color of law, pointed a loaded handgun within inches of PLAINTIFF's head absent any threat, exigent circumstances, or any situation where the need for deadly force could have been a possibility.

168.   As a direct result of THOMPSON's actions, PLAINTIFF sustained emotional injuries and is accordingly liable to PLAINTIFF for general damages.

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

169.  Defendant THOMPSON's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

## TWENTIETH CAUSE OF ACTION

## (VIOLATION OF ADA (Title II and III) and REHABILITATION ACT)

## (42 U.S.C. § 12132 &29 U.S.C. § 794)

## (Against Defendant CITY and THOMPSON, KITSIOS, and SOPKO)

170.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 169 as if set forth here in full.

171.    At all material  times herein PLAINTIFF was a "qualified individual" with a mental illness and disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental, medical, or physical health condition as defined under the ADA, 42 U.S.C. § 12131 (2), and under Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794, 28 C.F.R. 42.540 (k); as such, PLAINTIFF qualified as an individual with a mental and physical disability under California law and PLAINTIFF met the essential eligibility requirements of MBPD and State programs to provide access to medical and mental health care services for its detainee/inmate patients in MBPD's jail under interrogation while in custody.

172.    Defendants MBPD's jail is a place of public accommodation and are covered entities for purposes of enforcement of the ADA, 42 U.S.C. §12181 (7)(F), and the Rehabilitation Act, 29 U.S.C. § 794, as explicated by the regulations

promulgated under each of these laws. Further, on information and belief, Defendant MBPD received federal assistance and funds.

173.    Defendants MBPD as a, local government, and/or department or agency thereof, both fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).  MBPD is also within the mandate of the RA that no person with a disability may be "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

174.    Under the ADA, Defendant MBPD is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities . . . " and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

175.    Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101 (a)(2).

176.    Defendant MBPD is mandated under the ADA not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182 (a).

177.    The ADA, 42 U.S.C. § 12182(b)(1)(A)(iii), provides in pertinent part that: "[i]t shall be discriminatory to afford an individual or class of

Curd, Galindo & Smith, L.L.P.
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals." Id. (emphasis added).

178.    Defendants MBPD and THOMPSON, KITSIOS, and SOPKO violated the ADA, RA, and discriminated against PLAINTIFF, violating his ADA, RA, and state protected rights by: denying and aiding in the denial of full and equal accommodations, privileges, and services. Such discriminatory acts included, but was not limited to, the modifying of detention conditions into a more hostile, torturous environment that would naturally have a harmful impact on a person with Asperger's disorder, and deliberately not making any accommodations whatsoever after learning PLAINTIFF had a mental disability. Defendants THOMPSON, KITSIOS, and SOPKO's actions were motivated by the revelation PLAINTIFF had a mental disability and their perception of PLAINTIFF's disability.

## TWENTY FIRST CAUSE OF ACTION

### (Equal Protection/Discrimination)

### ([42 U.S.C. 1983] Fourteenth Amendment Equal Protection Clause)

### (Against Defendant THOMPSON, KITSIOS, and SOPKO)

179.    PLAINTIFF re-states and re-alleges each and every allegation in paragraph 1 through 179 as if set forth here in full.

180.  Defendants THOMPSON, KITSIOS, and SOPKO, acting under color of law, discriminated against PLAINTIFF by reason of his disability by denying

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178

and aiding in the denial of full and equal accommodations, privileges, and services. Such discriminatory acts included, but was not limited to, the modifying of detention conditions into a more hostile, torturous environment that would naturally have a harmful impact on a person with Asperger's disorder, and deliberately not making any accommodations whatsoever after learning PLAINTIFF had a mental disability.  Defendants THOMPSON, KITSIOS, and SOPKO's actions were motivated by the revelation that PLAINTIFF had a mental disability and their perception and knowledge of PLAINTIFF's disability.

181.   Defendants THOMPSON, KITSIOS, and SOPKO are ineligible for statutory immunity pursuant to Cal. Gov. Code § 820.4, as the violations of the Unruh Act derived from the illegal arrest and imprisonment of PLAINTIFF. Accordingly, Defendant CITY is vicariously liable for the acts of its employees pursuant to Cal. Gov. Code § 815.2.

182.   As a result of THOMPSON, KITSIOS, and SOPKO's actions, PLAINTIFF sustained physical and emotional injuries and is accordingly liable to PLAINTIFF for general damages.

183.   Defendant THOMPSON, KITSIOS, and SOPKO's acts were done with malice, oppression, fraud, and with intent to harm PLAINTIFF and therefore warrant punitive and exemplary damages.

//

//

//

//

Complaint for Damages for Violation of Civil Rights

47
_____

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA  90802
Ph: (562) 624-1177
Fx: (562)624-1178

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MASON SWAN LEWIS requests entry of judgement in his favor and against Defendants CITY, THOMPSON, KITSIOS, BRANDT, LEACH, TORRES, MIKELSON, SAN AGUSTIN, GORDON, HARRIS, SOPKO, SMITH, ROGERS, and DOES 1 through 20, inclusive, as follows:

(a)     for compensatory damages in an amount to be proven at trial;

(b)     for treble damages as authorized by statute

(c)     for punitive damages authorized under 42 U.S.C. § 1983 and by statute, in an amount to be proven at trial only as to the individual defendants;

(d)     for interest;

(e)     for statutory penalties under Cal. Civ. Code §§ 51, 51.7, and 52.1;

(f)     for reasonable costs of this suit and attorneys' fees; and

(g)     for such further other relief as the Court may deem just, necessary, and proper.

(h)     Injunctive Relief

Dated: April 23, 2024        **CURD, GALINDO & SMITH, LLP**


                              */s/ Alexis Galindo*
                              ALEXIS GALINDO

## JURY TRIAL DEMAND

Plaintiffs hereby respectfully demand a jury trial in this action, pursuant to Rule 38 of the Federal Rules of Civil Procedure.


Dated: April 23, 2024      **CURD, GALINDO & SMITH LLP**


         */s/ Alexis Galindo*
         ALEXIS GALINDO
         Attorneys for Plaintiff

**Curd, Galindo & Smith, L.L.P.**
301 E. Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Ph: (562) 624-1177
Fx: (562)624-1178